UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| PIERRE JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 23-cv-03070-CSB |
| | ) | |
| NICOLE ZIMMERMAN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Plaintiff, proceeding pro se and presently incarcerated at Hill Correctional Center, an Illinois Department of Corrections facility, pursues claims violations of his Eighth Amendment rights. At merit review, the Court found Plaintiff had stated an Eighth Amendment claim against Defendants Zimmerman and Huston related to their delaying Plaintiff's bathroom access. Defendants have moved for summary judgment. (Doc. 39). After the Court extended Plaintiff's time to respond, Plaintiff filed a Response (Doc. 43), and after an additional grant of more time, Defendants a Reply (Doc. 49). The motion is fully briefed and ready for ruling.

**Summary.**

Plaintiff's complaint, with attachments, is 164 pages. The Court's Merit Review Order (Doc. 14) identified a plausibly pleaded Eighth Amendment claim related to delayed access to a bathroom by Huston and Zimmerman. The Court noted that Plaintiff had included many other allegations against many defendants about a wide range of occurrences. The Court specifically ruled that aside from the Eighth

Amendment claim that it identified Plaintiff had plausibly pleaded, all other potential claims were dismissed without prejudice and must be pursued in other lawsuits. This was an appropriate and necessary exercise of the Court's discretion to manage what would be, as pleaded, an unmanageable morass of claims. See *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) (courts may dismiss omnibus complaints where the plaintiff will not be prejudiced due to statute of limitations running); *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022) ("A district court may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met."); Fed. R. Civ. P. 21 (on motion or on its own, the court may at any time, on just terms, add or drop a party or claim).

When the Court entered its Merit Review Order on August 29, 2023, the two-year statute of limitations had not yet run as to any of Plaintiff's claims, as his Complaint alleged that the dates of occurrence were "from 06/23/2022 to present."

Plaintiff was at that time put on notice that he was empowered to, and must, pursue any claims aside from those identified in the Merit Review Order in separate lawsuits. The Court will not reconsider that ruling, and will not allow Plaintiff to now, at summary judgment, seek to reinject any of the many potential claims contained within his original omnibus pleading. The Court takes the time to make these observations at the outset because Plaintiff's summary judgment response interweaves facts related to the active claim in this suit, along with a wide variety of facts, arguments, conclusory allegations, and documents that are not related to the claims that proceeded at merit review. No more is necessary, nor will more be said, as to these many other scattered issues, which included retaliation claims against Zimmerman and

Huston. The claim for resolution here is the claim against Huston and Zimmerman for denial of access to bathroom facilities.

**Plaintiff's summary judgment response.** Plaintiff's Response does not respond to Defendants' Statement of Undisputed Material Facts. Pursuant to Local Rule 7.1(D)(2)(b)(6), Defendants' facts are therefore deemed admitted. A district court does not abuse its discretion by strictly enforcing local and procedural rules, even against a pro se litigant. *Robinson v. Wexford Health Sources, et al.*, No. 22-1717, 2024 WL 676433, at *2 (7th Cir. Feb. 20, 2024) (unreported) (citing *McCurry v. Kenco Logistics Services, LLC*, 924 F.3d 783, 787 n.2 (7th Cir. 2019)).

Plaintiff also does not put forth any additional material facts as allowed – and in the format strictly required by – Local Rule 7.1(D)(2)(b)(5). He includes a section, "Plaintiff's Undisputed Material Facts." Some citations are included, and the facts with citations to material of record track Defendants' undisputed material facts. But this section also includes a great deal of unsupported speculation, argument, and legal conclusions which the Court disregards. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (explaining that speculation and hunches about defendants' motives cannot defeat summary judgment); *Bordelon v. Bd. of Educ.*, 811 F.3d 984, 991 (7th Cir. 2016) (stating that a plaintiff must offer "specific facts" rather than "sweeping generalizations" to preclude summary judgment).

The Court declines to sift through the record to determine whether Plaintiff's various broad assertions are somewhere supported by admissible evidence. "While [courts] liberally construe the pleadings of individuals who proceed pro se, 'neither

appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.'" *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (quoting *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)).

The Court has reviewed and in relevant part included Plaintiff's sworn deposition testimony, to the extent Plaintiff testified with personal knowledge as to facts, in an attempt to include what would be Plaintiff's likely trial evidence.

**The parties.**

Plaintiff is an inmate within the Illinois Department of Corrections. The occurrences at issue happened at Western Illinois Correctional Center. Defendant Zimmerman and Huston are correctional sergeants employed by the Illinois Department of Corrections. At the time of the incident, Zimmerman was a sergeant, and Huston was a correctional officer.

**The incident at issue.**

On June 23, 2022, Huston was assigned to the vocational building at Western. That same day, Plaintiff was scheduled for a video deposition related to another lawsuit. The deposition was conducted at the vocational building, where all video depositions are conducted. During the deposition a break was taken, and Plaintiff used the bathroom sometime during the 9:00 a.m. hour. (Doc. 39-6) at 72-72 (Plaintiff's deposition). During the 11:00 a.m. hour, Plaintiff needed to use the bathroom, but Huston told him that he could not, as he had already taken a bathroom break. Plaintiff needed to urinate and defecate, and urinated a small amount, in his boxers, toward the end of the deposition. *Id.* at 74. He did not fully defecate on himself, but his bowels did

begin to move. *Id.* The deposition concluded at about noon. On the record, during that video deposition on June 23, 2022, Plaintiff never requested to use the bathroom, nor did he notify the attorney on the record that there were any issues with him needing to use the bathroom or being denied bathroom facilities.

After the deposition concluded, Plaintiff again asked Huston to use the bathroom, and Huston said no, and told him to go back to his cell house, and that he would receive discipline if he did not do so. *Id.* at 76.

Plaintiff hurried back toward his cell house, jogging or running slowly, which was contrary to prison yard rules. He spoke to two unnamed officers, told them of his need to use the bathroom, and they encouraged him to slow down. *Id.* at 79. Plaintiff was in pain because he needed to urinate and defecate. Defendant Zimmerman was assigned to cell house 4B and was "running lines" of inmates as they moved between their cell houses and the prison yard. Plaintiff told Zimmerman he was in great need of using the bathroom. Zimmerman told him that he had to stop and wait behind a yellow line, which was used as a checkpoint or stopping point for inmates. *Id.* at 82. Plaintiff stopped. He told Zimmerman the situation and his urgent need to use the bathroom. Zimmerman told Plaintiff some officers needed to speak to him because he had been jogging, and the officers approached and asked why he had been jogging. He again explained the situation. An officer told him that he understood, but Plaintiff did have to walk. *Id.* at 84.

Zimmerman told Plaintiff that she was about to run gym lines, supervising inmates as they moved about the yard, and Plaintiff had to wait until she completed

that job. *Id.* at 84-85. Zimmerman said Plaintiff had to wait at the line, and Plaintiff then urinated and defecated on himself. Zimmerman told Plaintiff that if he did not follow her orders she would pepper-spray him. *Id.* at 85. Zimmerman alluded to other Western Illinois correctional staff who had been convicted of murdering an inmate and she warned him that he would be similarly injured if he did not follow her orders. *Id.* at 86. Zimmerman smirked at Plaintiff and stated that Plaintiff urinating and defecating on himself was nasty. *Id.* at 88. Plaintiff had to wait at the yellow checkpoint line until the inmates finished coming out, about ten minutes. *Id.* at 91. Zimmerman then told him he could go.

Plaintiff was embarrassed as he returned to his cell. Plaintiff returned to his cell and cleaned himself in his sink and changed his clothes. He handwashed the soiled clothes in his sink with laundry detergent and water and eventually sent them to the laundromat for washing. He is unsure when he next showered. *Id.* at 97.

He did not present evidence as to any injury aside from the discomfort of needing to use the bathroom, and the embarrassment of soiling himself.

**Summary judgment legal standard.**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986). To be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Eighth Amendment legal standard.**

An intentional action "not conforming to the regular, prescribed procedures for imposing punishment (and thus 'unusual'), and being severe (and thus 'cruel'), violates the Eighth Amendment." *Richman v. Sheahan*, 512 F.3d 876, 881 (7th Cir. 2008). "The burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Pyles v. Fahim*, 771 F.3d 403, 408–09 (7th Cir. 2014).

"As with a claim for deliberate indifference to serious medical needs, a conditions-of-confinement claim includes an objective and a subjective component." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). "The plaintiff must first establish 'an objective showing that the conditions are sufficiently serious—i.e., that they deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health and safety.'" *Id.* (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). "The plaintiff must next establish 'a subjective showing of a defendant's culpable state of mind.'" *Id.* "[T]he state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Giles*, 914 F.3d at 1051. While "long-term deprivations of modern toilet facilities [are] potential Eighth Amendment violations,"

brief or sporadic denial of access to toilets are not. See *White v. Knight*, 710 Fed. Appx. 260, 261 (7th Cir. 2018).

Finally, certain actions, if intentionally undertaken to humiliate and degrade prisoners, may violate the Eighth Amendment, "but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

**Eighth Amendment analysis.**

The facts of what occurred here are unpleasant, and the Court understands why Plaintiff filed this lawsuit. But the undisputed material facts on the claim before the Court entitle Defendants to judgment as a matter of law.

First, there was no long-term deprivation of Plaintiff's toilet access. Instead, during a deposition, after being allowed to use the toilet once, he was denied further toilet access for the balance of the deposition by Defendant Huston, who was charged with securing the building in which Plaintiff was being deposed. Plaintiff then left, was jogging across the prison grounds and was briefly delayed in explaining why he was running. Defendant Zimmerman then required Plaintiff to wait while she completed her security task, and during that time Plaintiff was unable to hold his urine and feces and so soiled himself. Many people find themselves in situations where they desperately needed to use a toilet, but due to all sorts of circumstances, do not have access to one. That this happened to Plaintiff is surely regrettable, but it simply does not rise to the level of an unusual and severe deprivation.

Plaintiff argues Defendants meant to humiliate and degrade him, another legal pathway to potentially proving Eighth Amendment liability. But from the record before the Court, no reasonable jury could so find.

Huston was providing security for the vocational building, allowed Plaintiff toilet access once during the deposition, then said no more. More may have been better, but this one occurrence is insufficient for a jury to return a verdict for Plaintiff and against Huston for violating Plaintiff's Eighth Amendment rights against cruel and unusual punishment.

As to Zimmerman, Plaintiff's need to eliminate had become more urgent as he approached her. But too, Zimmerman was responsible for the security and movement of, at that time, several hundred prisoners moving between the cell houses and the prison yard. Zimmerman's command that Plaintiff wait at the checkpoint, and her threat that he could be pepper sprayed or physically injured if he disobeyed that direct order, were not pleasant. They were harsh and demanded (and gained) immediate compliance. But considering the concurrent competing demands of Zimmerman's security duties – which were high – no reasonable jury could find that requiring Plaintiff to wait at the checkpoint line in this manner violated his constitutional rights. See *Calhoun*, 319 F.3d at 939 (no constitutional violation unless action was "so totally without penological justification that it results in the gratuitous infliction of suffering.") (citations omitted).

**Additional motions.**

Plaintiff's Motion for Summary Judgment Status (Doc. 55) is moot. Plaintiff's Motion for Chief Judge to Preside Over Case or in the Alternative a New Judge be Assigned (Doc. 56) seeks transfer to another judge based on the time it has taken for this Court to rule on the pending summary judgment motion. That motion is denied. The summary judgment motion was fully briefed, after both sides sought additional time for filings, on December 31, 2024. The Court agrees with Plaintiff that expeditious rulings are desirable. The Court has prepared this Order at its earliest opportunity consistent with the other demands on the efforts of the Court. Plaintiff has not provided a meritorious basis for reassignment of this action.

**Defense counsel to provide copy of cited case to the Court.**

The Court now directs defense counsel by September 15, 2025, to docket a full copy of the Seventh Circuit case cited in Section III of their Motion for Summary Judgment. (Doc. 39) at 7.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Motion for Status [55] is MOOT.

2. Plaintiff's Motion for Chief Judge to Preside [56] is DENIED.

3. Defendants' Motion for Summary Judgment [39] is GRANTED. Judgment to enter in favor of Defendants and against Plaintiff. This action is terminated.

4. Defense counsel to file copy of Seventh Circuit case as directed in body of written order by 9/15/25.

5. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). If he elects to appeal, he also is hereby ordered to file a motion for leave to appeal in forma pauperis, which must identify the specific issues Plaintiff

wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also *Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."). If Plaintiff does choose to appeal, he will be responsible for paying the $605.00 appellate filing fee regardless of the outcome of the appeal, and regardless of whether he is granted leave to pay over time (in forma pauperis status).

Entered this 8th day of September, 2025.

*s/Colin S. Bruce*
COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE